## Shannon, Appellant, *v.* American Iron & Steel Mfg. Co.

*Principal and guaranty—Statute of frauds—Agreement to pay to materialmen for supplies.*

Where a corporation enters into a contract for the construction of an addition to a building, and after the work has progressed, the treasurer of the company orally states to a materialman furnishing supplies to the contractor "if there is anything new in the way of tools and machinery that he (the contractor) needs to complete the job, don't hold him up; give it promptly, and we will

see that you are paid," the promise is an agreement to pay the debt of another and void under the Act of April 26, 1855, P. L. 308, if it appears that the goods furnished did not enter into the structure of the building, that they were bought without consultation with the company as to quantity, quality or price, that they had been charged to the contractor, that the materialman had attempted to collect from the contractor, but had failed, and that although the owner had paid a previous bill of the materialman, it had been for goods bought directly by the owner and charged to it.

Not decided whether the treasurer could bind the corporation by such a promise.

Argued Nov. 17, 1916. Appeal, No. 308, Oct. T., 1916, by plaintiff, from judgment of C. P. No. 5, Philadelphia Co., Sept. T., 1914, No. 1980, for defendant n. o. v. in case of J. Jacob Shannon & Co. v. American Iron & Steel Mfg. Co. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit for tools and machinery used in the erection of an addition to a steel plant. Before MARTIN, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for plaintiff for $1,456.23. Subsequently the court in an opinion by STAAKE, J., entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*William A. Carr*, with him *W. Horace Hepburn* and *Sidney L. Krauss*, for appellant.—It is respectfully submitted that the promise was not a promise to pay the debt of another, but was an absolute original undertaking upon the part of the defendant company to pay for goods which would not have been supplied except for the promise, and the promise was made to subserve the defendant company's own interests.

That this case was one that was required to be submitted to the jury, is shown by the following cases: May v. Walker, 20 Pa. Superior Ct., 581; Hall v. Lincoln Savings and Trust Company, 220 Pa. 485; Corcoran v. Huey, 231 Pa. 441.

*Frank P. Prichard,* with him *John G. Johnson,* for appellee.—The promise was a promise to pay the debt of another, and void under the Act of April 26, 1855, P. L. 308; Connor v. Stewart, 55 Pa. Superior Ct. 381; Stouffer v. Jackson, 42 Pa. Superior Ct. 450.

OPINION BY HENDERSON, J., March 16, 1917:

The plaintiff's action is founded on a parol agreement alleged to have been made by the treasurer of the defendant company to pay for a quantity of merchandise sold to C. D. Weller who had entered into a contract with the defendant for the erection of an addition to its plant. Two questions are raised: (1) whether the testimony takes the case out of the operation of the Act of April 26, 1855, P. L. 308, and (2) whether the treasurer of the defendant had authority to bind the company with respect to the promise.  The promise set up as stated by Robert R. Rorke, who was an agent for the plaintiff and the only witness called to prove the contract, was as follows: "If there is anything new in the way of tools and machinery that he (Weller) needs to complete the job don't hold him up.  Give it promptly and we will see that you are paid."  At a later interview the treasurer said to Rorke that the plaintiff should "ship the goods the same as usual and he would see that we (the plaintiffs) were paid."  The learned court below entertaining the opinion that the promise set up was one to pay the debt of another and was, therefore, within the statute of frauds entered judgment n. o. v. for the defendant and from that judgment this appeal was taken.  While the words used are important as determining the character of the defendant's undertaking in such cases lia-

bility is not to be established by the words alone. They must be construed in the light of the relevant facts. The circumstances and the words of the promise must be considered together in ascertaining whether an action may be supported notwithstanding the statute. Where one undertakes to enforce a verbal promise to answer for the debt or default of another if the original debt remains it is necessary to show that his case is of a character that is recognized as exceptional. While no rule can be easily expressed by which to determine in all cases whether a promise to be responsible for the debt or liability of another is or is not within the statute it is a general rule that when the leading object of the promise is to become guarantor or surety for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time of the promise of the principal, is within the statute and of no effect unless in writing: Nugent v. Wolfe, 111 Pa. 480; Gable v. Graybill, 1 Pa. Superior Ct. 29. If the promise be collateral to a continued liability of the primary debtor it is within the statute but if it be a substitute or the promise shows an intention of the parties that the new promisor shall become the principal debtor and the original become but secondarily liable such promise is not to be regarded as an original undertaking while the old debt remains. This is stated to be the general rule in Maule v. Bucknell, 50 Pa. 39; Nugent v. Wolfe, supra, and many other cases. In some of the cases where the question has arisen the promisor had become the trustee of a fund or had otherwise acquired means to which the original debtor was entitled and was made liable as a principal debtor because of the possession of such funds or means of payment. But where liability is sought to be created merely on the strength of a verbal agreement and where it does not appear from the circumstances of the case that it was the intention of the promisor to assume a primary liability the statute operates on the promise: Conner v. Stewart, 55 Pa.

Superior Ct. 381; Stauffer v. Jackson, 42 Pa. Superior Ct. 450. The case of Hall v. Lincoln Savings and Trust Co., 220 Pa. 485, relied on by the appellant is not inconsistent with this general rule. There the promisor had possessed a fund which was appropriated by the owner thereof to the payment of the debt. A consideration for the promise was this money. It was not the money of the latter but of the person on whose contract the debt had been created. In such a case the promisor is a trustee and the consideration moves directly from the creditor to him in support of the promise. The promise in such circumstances is rather to answer for the obligation of the promisor to apply the fund to the appropriation made by the owner than to answer for the default of a debtor. It is a recognized principle that a promise to pay the debt of another in consideration of property received or to be received of the debtor for that purpose is not within the statute. The promisor thereby makes the debt his own and incurs a primary liability. The case of May v. Walker, 20 Pa. Superior Ct. 582, was one in which the plaintiff relied on the distinct and unqualified promise that the defendants would pay him for the material to be used by the contractor. This material was stone to be used in the defendant's building and the plaintiff alleged and proved that the defendant agreed to pay for this material. On the facts the court held that the transaction was an original undertaking entered into to subserve the defendant's purpose. The case was of that character therefore in which the principal object of the promise was the primary advantage to be gained by the promisor as a result of the undertaking. The undisputed evidence in the case before us is that the first sale of implements by the plaintiff on account of Weller's contract with the defendant was made directly to the defendant. The merchandise was contracted for by the defendant, was charged to it, shipped to it and paid for by it. The subsequent sales were made to Weller, charged to him and shipped to him.

They were made without consultation with the defendant as to quantity, quality or price. The bill for the second shipment was charged to Weller and he made a payment of $700 thereon leaving a balance of about $2,800. A bill for this was forwarded to the defendant whereupon the treasurer of the company made out a voucher of the defendant company in favor of Weller for the amount which Weller endorsed to the plaintiff and which was then forwarded by the treasurer of the defendant. Accompanying this enclosure was a request that the plaintiff's bill be receipted in duplicate, one copy to be given to Weller and one retained by the treasurer. This payment was made early in March. Subsequently Weller bought other tools and implements from the plaintiff amounting to $1,417.86 which were charged to Weller and shipped to him. It is for the recovery of this latter amount that the plaintiff's action was brought. The transaction has all the features of a sale by the plaintiff to Weller with a verbal agreement of the treasurer of the defendant that he or the company would guarantee the payment of the account. The testimony does not show that the agreement was that the defendant would see that the debt was paid. The statement is that "I," (that is, the treasurer) or "we will see that you are paid." Assuming that by this it was intended that the defendant would be responsible for the debt we are unable to avoid the conclusion that this was an undertaking to answer for the default of another. The liability was contingent; if Weller paid, the defendant could not be charged. The plaintiff endeavored to collect from Weller and did make collections from him. It was only because he failed that resort was had to the defendant and that this action was brought. The case is quite like that exhibited in Stauffer v. Jackson, supra, and in Conner v. Stewart, supra. The plaintiff seems to have regarded Weller as the person to whom the merchandise was sold. The bills were made to him and he was credited with the payments received. On the whole transac-

tion we think the inference a fair one that the primary liability was that of Weller and that the defendant was looked to as the guarantor of his debt. We do not regard the arrangement as one in which the leading purpose and effect of the transaction were the benefit which the defendant derived from which it might fairly be said that the debt was that of the latter rather than of Weller. The material furnished did not enter into the structure of the defendant's property and was of a character which might have been obtained in other places in the open market. The purpose of the promise was to guarantee the payment of the bill which Weller contracted for the goods ordered by him. In such a case the promise is within the statute and not enforceable in an action at law.

We do not deem it necessary to discuss the other defense presented that the treasurer of the defendant had no authority to bind the company on an obligation of the kind set forth in the statement of claim. It is a serious obstacle in the plaintiff's path but as the case is disposed of on other grounds we need express no opinion on that subject. In a review of the whole case we are of the opinion that the action of the court below was well taken.

The judgment is affirmed.